**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>PEAK HOTELS AND RESORTS GROUP LIMITED,<br><br>                Debtor. | Chapter 7<br><br>Case No. 17-12813-scc |

## DECLARATION OF BALJINDER (BALJI) MINHAS

I, Baljinder (Balji) Minhas, declare:

A.      Introduction

1. I am the President and sole owner of High-Def Zone, Inc. ("High-Def"), which maintains offices at 215 McNair Circle, Northampton, Pennsylvania.

2. I make this declaration in support of High-Def's opposition to the Motion of Tarek Investments Limited, seeking to dismiss the Chapter 7 bankruptcy case of Peak Hotels and Resorts Group Limited ("PHRGL"). Except as otherwise indicated, I make this declaration based upon my personal knowledge.

3. I started High-Def in approximately 2005 and formally incorporated High-Def as a Pennsylvania corporation in 2007. High-Def is in the business of designing and engineering high-end luxury automation systems, enterprise class IT networking solutions and lighting and shade control systems.

4. High-Def is a small business with annual gross revenue of between $100,000 and $400,000.

5. On behalf of High-Def, and on the advice of counsel, I signed (a) the involuntary petition that commenced the chapter 7 bankruptcy case of PHRGL in the Bankruptcy Court in

Miami, Florida, and (b) the proof of claim filed by High-Def in that case, a copy of which is annexed hereto as Exhibit 1.

B.  High-Def's Claim Against PHRGL

6.  In approximately 2011, High-Def was hired to design an outdoor entertaining space at the residence of Afzal Amanat ("Afzal"), in Pine Brook, New Jersey. Upon completion, that project was profiled in Electronic House magazine, and won an award for "best outdoor space." Copies of Electronic House's profile, and the announcement of our award are annexed hereto as Exhibit 2 and Exhibit 3, respectively. High-Def has undertaken additional projects for Afzal, who is one of High-Def's biggest clients, and has become a good and trusted friend of mine.

7.  In December 2013, Afzal advised me that his nephew, Omar Amanat ("Omar") was acquiring a major stake in a hotel chain, and suggested I reach out to Omar to assist him in setting up offices for his hotel venture.

8.  On December 27, 2013, I e-mailed Omar and I flew to Miami to meet him the next day at his home office, located at 1500 Bay Road, 1582S, Miami, Florida. Omar said he required a conference room with live video-conferencing capabilities to manage his hotels.

9.  During our meeting, Omar advised that he was acquiring an interest in a luxury hotel chain, and I proposed installing a high end audio/visual distribution system. At the time, I was developing a then-cutting edge Smart TV centralized audio/video distribution system (the "Centralized System") for hotels. Omar was intrigued and asked that I build a custom Centralized System in his PHRGL home office, that would serve as a prototype for larger Centralized Systems that could be installed in PHRGL's hotels.

10.  In addition, Omar asked that I install at PHRGL's New York City office, located at 423 West Street, Penthouse 1, a monitoring system that would serve as a prototype for

2

monitoring systems that could be installed at PHRGL's hotels that would permit simultaneous viewing of multiple locations from the Centralized System (the "Monitoring System").

11. I told Omar High-Def was capable of undertaking these projects for PHRGL and advised him the cost would be approximately $150,000.

12. Following my meeting with Omar, I met with James Mccluskey ("Mccluskey"), a consultant who shared my dream of following in the footsteps of other great entrepreneurs and growing High-Def into a very profitable company. Mccluskey and I agreed to work together on PHRGL's projects, in the hope that we would land a contract to install the Centralized System and the Monitoring System in all of PHRGL's hotels.

13. I sent PHRGL a contract and Omar returned duplicate signed contracts to me, one dated January 17, 2014 and the other dated January 22, 2014. The January 22, 2014 contract was sent with an email stating, "I was advised to re-execute and send this to you dated today at the advice of counsel." A copy of both executed contracts and the e-mail are annexed hereto as Exhibit 4.

14. High-Def commenced and completed work on PHRGL's Miami project in January, 2014. High-Def also delivered materials and began working on PHRGL's New York project in January, 2014 but the project was not completed because PHRGL failed to pay High-Def's invoices. Copies of High-Def's invoices are included in the proof of claim. At the end of January 2014, PHRGL's invoices remained unpaid, and I began sending Omar e-mails and calling him asking when PHRGL would pay. From January, 2014 through January, 2015, I demanded payment of the invoices. Copies of e-mails wherein I requested payment from PHRGL are annexed hereto as Exhibit 5.

15. From January 30, 2014 through March, 2014, Omar responded to my demands for payment, promising that PHRGL would pay High-Def's invoices, confirming the money was

3

owed to High-Def and confirming that PHRGL was satisfied with High-Def's work. Copies of relevant e-mails from Omar are annexed hereto as Exhibit 5.

16. Between August, 2015 and July, 2016, High-Def contacted Doronin for payment of the outstanding invoices High-Def issued to PHRGL. Doronin did not contest the invoices. On information and belief, Doronin was then in control of PHRGL. Copies of the demands for payment sent to Doronin are attached hereto as Exhibit 6.

C. PHRGL's Bankruptcy

17. In early 2017, Mccluskey told me he had learned that a company called Lightray Imaging had purchased claims against PHRGL.

18. Thereafter, Mccluskey and I spoke by telephone with Jason Rosen of Lightray, who declined to buy High-Def's claim, but suggested that High-Def's best chance of getting paid by PHRGL was to initiate an involuntary bankruptcy case. Mr. Rosen explained that if PHRGL was in bankruptcy, a litigation could be brought which might generate enough proceeds to pay High-Def's invoices.

19. Although I would be delighted to receive payment of High-Def's invoices, because of my friendship with Afzal and my desire not to hurt him or his family, I spoke to him about the possibility of High-Def commencing an involuntary bankruptcy case against PHRGL, which could implicate Omar, Afzal's nephew. Afzal suggested I speak directly with Omar.

20. Mccluskey and I called Omar and he advised that PHRGL was broke and High-Def's best shot of getting paid was to initiate an involuntary bankruptcy case. Omar also told us he did not expect to profit from any resulting litigation given how much debt PHRGL had, but that he hoped High-Def would get paid. *See*, e-mail correspondence between Omar and Mccluskey annexed hereto as Exhibit 7.

4

21. Lightray had suggested High-Def contact Joel Aresty, an experienced bankruptcy lawyer in Miami.

22. High-Def has served as a petitioning creditor solely because it believes it is the only chance High-Def has of receiving payment of its invoices to PHRGL. High-Def believes a neutral Chapter 7 trustee, who has a fiduciary obligation to maximize the value of PHRGL's estate and distribute PHRGL's assets to its creditors, is the only hope of getting paid for the work it has done for PHRGL. Omar has no interest in High-Def. High-Def's and my connection with Omar and PHRGL is PHRGL's retention of High-Def as described in this Declaration.

*[Signature on following page]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 21, 2017.

_____
Baljinder (Balji) Minhas