**Stradley Ronon Stevens & Young, LLP**
100 Park Avenue, Suite 2000
New York, NY 10017
Telephone: (212) 812-4138
Facsimile: (646) 682-7180
Deborah A. Reperowitz
Gretchen M. Santamour

*Attorneys for Claimant High-Def Zone, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 17-12813 (SCC) |
| Peak Hotels and Resorts Group Limited, | |
| Debtor. | |

**MEMORANDUM OF LAW IN SUPPORT OF HIGH-DEF ZONE, INC.'S**
**OPPOSITION TO MOTION TO DISMISS THE CHAPTER 7 CASE OF**
**PEAK HOTELS AND RESORTS GROUP LIMITED**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................1

II.    BACKGROUND ........................................................................................4

    A.    High-Def's Claims Against PHRGL .......................................................4

    B.    The Diversion of PHRGL's Assets and the U.S. Bankruptcy Cases .......................7

III.   ARGUMENT ..............................................................................................7

    A.    Tarek Lacks Standing to Seek Dismissal of PHRGL's Chapter 7 Case .................7

    B.    Tarek Lacks Standing to Object to High-Def's Claims ...........................................8

    C.    PHRGL Qualifies as a Debtor under Section 109 of the Bankruptcy Code ..........10

        i.    PHRGL Has Property in the United States .................................................10

        ii.   An Unregistered Company Can Qualify as a Debtor.................................11

    D.    High-Def Holds a Claim Against PHRGL Sufficient to Meet the
        Conditions Set Forth in Section 303(b) of the Bankruptcy Code. ........................12

        i.    No Bona Fide Disputes Exist as to the Existence or Amount of
            High-Def's Claim..........................................................................................12

        ii.   Amanat Had Authority to Bind PHRGL.....................................................14

    E.    This Case was not Commenced in Bad Faith. .......................................................16

    F.    Dismissal Pursuant To Section 305 Is Not Warranted...........................................19

V.    CONCLUSION.................................................................................................22

# 3422933  v. 5

# TABLE OF AUTHORITIES

## CASES

*Aries Ventures Ltd. v. Axa Fin. S.A.*,
    729 F. Supp. 289 (S.D.N.Y. 1990) ....................................................................18

*Automatic Sprinkler Corp. of Am. v. Darla Envtl. Specialists Inc.*,
    53 F.3d 181 (7th Cir. 1995) ...........................................................................11

*Carney v. Beracha*,
    996 F. Supp. 2d 56 (D. Conn. 2014) ..............................................................18

*Gianino v. Panacya*,
    2000 WL 1224810 (S.D.N.Y.) ........................................................................15

*In re Bavelis*,
    453 B.R. 832 (Bankr. S.D. Ohio 2011) ..........................................................18

*In re Berau Capital Res. Pte Ltd*,
    540 B.R. 80 (Bankr. S.D.N.Y. 2015) .............................................................10

*In re Dinova*,
    212 B.R. 437 (B.A.P. 2d Cir. 1997) ...............................................................20

*In re E.S. Bankest, L.C.*,
    321 B.R. 590 (Bankr. S.D. Fla. 2005) .......................................................... 8-9

*In re Inversora Eléctrica de Buenos Aires S.A.*,
    560 B.R. 650 (Bankr. S.D.N.Y. 2016) ...........................................................10

*In re Ishaky*,
    2010 WL 935572 (Bankr. E.D.N.Y.) ........................................................ 12-13

*In re Manshul*,
    223 B.R. 428 (Bankr. S.D.N.Y. 1998) .............................................................8

*In re MarketXT Holdings Corp.*,
    347 B.R. 156 (Bankr. S.D.N.Y. 2006) .............................................................7

*In re Monitor Single Lift I, Ltd.*,
    381 B.R. 455 (Bankr. S.D.N.Y. 2008) ...........................................................20

*In re New Era Co.*,
    115 B.R. 41 (Bankr. S.D.N.Y. 1990) ...............................................................8

*In re Ocean Rig UDW Inc.*,
    570 B.R. 687 (Bankr. S.D.N.Y 2017) .............................................................10

# 3422933  v. 5

*In re Octaviar Admin. Pty Ltd*,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014) ............................................................. 10-11

*In re Paper I Partners, L.P.*,
    283 B.R. 661 (Bankr. S.D.N.Y. 2002) ............................................................ Passim

*In re Peak Hotels and Resorts Ltd.*,
    No. 17-12813 (SCC) (Bankr. S.D.N.Y. Oct. 18, 2017), ECF No. 91 ...................... 1

*In re QDN LLC*,
    363 F. App'x. 873 (3d Cir. 2010) ...........................................................................8

*In re Reveley*,
    148 B.R. 398 (Bankr. S.D.N.Y. 1992) ...................................................................17

*In re Rosenberg*,
    472 Fed. App'x 890 (11th Cir. 2012) .....................................................................8

*In re Scandia Seafood (New York), Inc.*,
    2017 WL 2062894 (Bankr. S.D.N.Y.) ...................................................................20

*In re Super Trading Co.*,
    22 F.2d 480 (2d Cir. 1927)....................................................................................15

*In re Thompson*,
    865 F.2d 1136 (1st Cir. 1992) ................................................................................9

*In re TPG Troy, LLC*,
    2013 WL 3789344 (Bankr. S.D.N.Y.) ...................................................................17

*In re U.S. Steel Canada Inc.*,
    571 B.R. 600 (Bankr. S.D.N.Y. 2017) ...................................................................10

*In re United Tax Grp., LLC*,
    2016 Bankr. LEXIS 4315 (Bankr. D. Del. Dec. 12, 2016) ......................................8

*Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*,
    505 F.3d 109 (2d Cir. 2007)....................................................................................8

*Leidigh v. Reading Plaza Gen., Inc.*,
    636 A.2d 666 (Pa. Super. Ct. 1994) ................................................................. 14-15

*Matter of Luftek, Inc.*,
    6 B.R. 539 (Bankr. E.D.N.Y. 1980).......................................................................11

*Parry v. St. Catherine of Siena Medical Center*,
    2014 WL 639422 (E.D.N.Y.) ................................................................................18

iii

*Pascazi v. Fiber Consultants, Inc.*,
    445 B.R. 124 (S.D.N.Y. 2011)..................................................................................9

*Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.)*,
    640 F.3d 53 (2d Cir. 2011)......................................................................................8

*Turner Hydraulics v. Susquehanna Const.*,
    606 A.2d 532 (Pa. Super. Ct. 1992).......................................................................14

*Walton v. Johnson*,
    66 A.3d 782, 786 (Pa. Super. Ct. 2013).................................................................14

## RULES

FED. R. BANKR. P. 1011 ....................................................................................................7

FED. R. BANKR. P. 1011(a)................................................................................................7

## CODES

11 U.S.C. §109(b) ............................................................................................................11

Chapter 7 of the Bankruptcy Code........................................................................... Passim

Section 109 of the Bankruptcy Code ........................................................................ 10-11

Section 303 of the Bankruptcy Code .....................................................................8, 12, 11

Section 303(b) of the Bankruptcy Code..........................................................................12

Section 303(d) of the Bankruptcy Code....................................................................... 7-8

Section 305 of the Bankruptcy Code ........................................................................ 19-20

Section 502(a) of the Bankruptcy Code............................................................................8

Section 215(3)(b) BVI BUSINESS COMPANIES ACT, 2004............................................11

High-Def Zone, Inc. ("High-Def"), the petitioning creditor in this Chapter 7 bankruptcy

case of Peak Hotels and Resorts Group Limited ("PHRGL"), by and through its undersigned

counsel, hereby opposes the motion of Tarek Investments Limited ("Tarek") to dismiss this case

(the "Motion"),[1] and respectfully submits as follows:[2]

## I.    PRELIMINARY STATEMENT

The Motion rests on Tarek's unsupported allegations of fraud and bad faith on the part of

various parties with respect to this involuntary Chapter 7 case and the events leading up to it.

Indeed, Tarek has relied upon supposition, speculation and creativity to build a one-sided

account of the struggle between Vladislav Doronin ("Doronin"), the majority shareholder of

Tarek, and Omar Amanat ("Amanat") for control over a group of luxury hotels operated by

Silverlink Resorts Limited ("Silverlink").  While the Motion alleges certain actions by Amanat in

connection with PHRGL and related entities and assets, LightRay Imaging Inc. ("LightRay")

paints a different story in its opposition to the Motion.  What is indisputable, however, is that

High-Def is completely uninvolved with the underlying struggle for control over the hotels.

Instead, High-Def contracted with, and provided goods and services to, PHRGL for which High-

Def has never been paid, despite acknowledgement by PHRGL that it owes the debt.  The

evidence relating to High-Def's claim is incontrovertible and should be the Court's primary

focus in considering Tarek's unfounded and unsubstantiated story of fraud and bad faith.

Indeed, while Doronin and Amanat were waging war to retain and/or gain control of the

equity of Silverlink, PHRGL's legitimate debts, such as the one to High-Def, have gone unpaid.

Settlements, foreclosures and asset transfers relative to PHRGL and its assets allegedly have

---

[1]    *In re Peak Hotels and Resorts Ltd.*, No. 17-12813 (SCC) (Bankr. S.D.N.Y. Oct. 18, 2017), ECF No. 91.  All
future references to court filings in this case, shall be referred to as "Docket No. __."

[2]    Submitted in support of this Opposition is the Declaration of Baljinder (Balji) Minhas (the "Minhas Decl.")
dated November 22, 2017.

occurred over the past few years under circumstances that are, at a minimum, suspect.  Quite

simply, High-Def's claim was incurred by PHRGL and then disregarded in the epic battle

between two wealthy investors for control of a luxury hotel chain, which according to Tarek, has

rendered PHRGL assetless.

The Motion eschews the simple facts and law that support the involuntary petition and

compel this Court to deny the Motion.  Instead, the Motion recites innumerable "facts" which

may be relevant to this Chapter 7 case and the marshalling or recovery of PHRGL's assets, but

are not relevant to the issue of whether the case should be dismissed.  The facts relevant to the

Motion are as follows:  Pursuant to a contract between PHRGL and High-Def dated January 22,

2014 (the "Contract"), High-Def provided services and supplied valuable equipment to PHRGL.[3]

High-Def remains unpaid for the equipment and services it provided to PHRGL.[4]  Over a period

of almost four years, despite High-Def's numerous requests for payment, neither PHRGL nor

anyone else has disputed the legitimacy of PHRGL's liability to High-Def or the amount owed to

High Def until Tarek concocted its self-serving story of fraud and bad faith set forth in the

Motion.[5]

Tarek devotes a significant portion of the Motion to alleging that connections exist

between various people and entities. Many of those connections, to the extent they exist, are

extraneous to the Motion. For example, Tarek implies that there is something sinister about the

interaction between High-Def and LightRay to pursue this involuntary proceeding. Such

interaction, however, is neither unusual nor in bad faith.  LightRay, like High-Def, is a creditor

of PHRGL seeking payment of its claims.  It is not uncommon for creditors of a debtor to

---

[3]    *See Minhas Decl. ¶¶13, 14.*

[4]    *See Minhas Decl. ¶14.*

[5]    *See Minhas Decl. ¶14, 15, 16.*

2

combine their efforts to obtain payment of their claims, particularly when the majority

shareholder of a company like PHRGL, that allegedly had hundreds of millions of dollars of

assets, suddenly advises that the company is assetless.  This is particularly true where the

majority shareholder, or people or entities related thereto appear to be in the direct line of the

debtor's asset dispossession.  High-Def simply wants to be paid under its Contract with PHRGL

for the work it performed and the goods it delivered, and believes that the bankruptcy court is the

best forum in which to investigate the various settlements, foreclosure and transfers of assets

relative to PHRGL and to recover such assets as appropriate and distribute them to bona fide

creditors.

Tarek's efforts to portray a complicated tale of fraud and intrigue as the motive for High-

Def's petition is curious.  Tarek is not a creditor of PHRGL, rather, Tarek is the majority

shareholder.  If PHRGL is in fact assetless, as Tarek has maintained, why would Tarek spend the

time, money and energy to so vehemently oppose the Petition?  Perhaps it is because a Chapter 7

Trustee may be entitled to recover assets from a Doronin-related entity, and Doronin also

controls Tarek.

High-Def has nothing to hide.  Investigation into its actions and affiliations will reveal

nothing but a legitimate business that got stiffed on a contract with PHRGL, while two wealthy

and powerful men fought over control of PHRGL's assets.  This Chapter 7 case was commenced

in good faith and an independent trustee should be allowed to conduct an investigation into

PHRGL's assets and have the authority to recover and distribute such assets as appropriate to

bona fide creditors of PHRGL's estate, such as High-Def.

3

## II.    BACKGROUND

### A.    High-Def's Claims Against PHRGL

High-Def was founded in 2005 and formally incorporated as a Pennsylvania corporation in 2007.[6]  High-Def is in the business of designing and engineering high-end luxury automation systems, enterprise class IT networking solutions and lighting and shade control systems.[7]

Baljinder (Balji) Minhas is the sole owner and President of High-Def.[8]  High-Def is a small business with annual gross revenue of between $100,000 and $400,000.[9]

In approximately 2011, High-Def was hired to design an outdoor entertaining space at the residence of Afzal Amanat ("Afzal"), in Pine Brook, New Jersey.[10]  Upon completion, that project was profiled in Electronic House magazine, and won an award for "best outdoor space."[11] High-Def has undertaken additional projects for Afzal, who is one of High-Def's biggest clients.[12]

In December 2013, Afzal advised High-Def that Afzal's nephew, Amanat, was acquiring a major stake in a hotel chain, and suggested High-Def reach out to Amanat to assist him in setting up offices for his hotel venture.[13]

---

[6]    *See Minhas Decl. ¶3.*

[7]    *Id.*

[8]    *See Minhas Decl. ¶1.*

[9]    *See Minhas Decl. ¶4.*

[10]    *See Minhas Decl. ¶6.*

[11]    *Id.*

[12]    *Id.*

[13]    *See Minhas Decl. ¶7.*

# 3422933  v. 5

On December 27, 2013, Balji Minhas e-mailed Amanat and Mr. Minhas flew to Miami to meet Amanat the next day at Amanat's home office.[14]  Amanat said he required a conference room with live video-conferencing capabilities to manage his hotels.[15]

During the meeting with Mr. Minhas, Amanat stated that he was acquiring an interest in a luxury hotel chain, and Mr. Minhas proposed installing a high end audio/visual distribution system in the hotels.  At the time, High-Def was developing a then-cutting edge Smart TV centralized audio/video distribution system (the "Centralized System") for hotels.  Amanat asked High-Def to build a custom Centralized System in his PHRGL home office that would serve as a prototype for larger Centralized Systems that could be installed in PHRGL's hotels.[16]

In addition, Amanat asked that High-Def install at PHRGL's New York City office, a monitoring system to serve as a prototype for monitoring systems that could be installed at PHRGL's hotels and would permit simultaneous viewing of multiple locations from the Centralized System (the "Monitoring System").[17]

Mr. Minhas confirmed High-Def's ability to undertake the conference rooms, Centralized System and Monitoring System projects for PHRGL and advised the cost would be approximately $150,000.[18]

Mr. Minhas contacted James Mccluskey ("Mccluskey"), a consultant, and the men agreed to work together on PHRGL's projects in the hope that High-Def would land a contract to install the Centralized System and the Monitoring System in all of PHRGL's hotels.[19]

---

[14]  *See Minhas Decl. ¶9.*

[15]  *See Minhas Decl. ¶8.*

[16]  *See Minhas Decl. ¶9.*

[17]  *See Minhas Decl. ¶10.*

[18]  *See Minhas Decl. ¶11.*

# 3422933  v. 5

High-Def sent PHRGL a contract and Amanat returned duplicate signed contracts to Mr. Minhas, one dated January 17, 2014 and the other dated January 22, 2014.[20]  The January 22, 2014 contract was sent with an email stating, "I was advised to re-execute and send this to you dated today at the advice of counsel."[21]

High-Def commenced and completed work on PHRGL's Miami project in January, 2014. High-Def also delivered materials and began working on PHRGL's New York project in January, 2014, but the project was not completed because PHRGL failed to pay High-Def's invoices.[22]  Copies of High-Def's invoices are included in the proof of claim.[23]  At the end of January 2014, PHRGL's invoices remained unpaid, and Mr. Minhas began sending Amanat e-mails and calling him asking when PHRGL would pay.[24] From January, 2014 through January, 2015, High-Def repeatedly demanded payment of the invoices. [25]

From January 30, 2014 through March, 2014, Amanat responded to High-Def's demands for payment, promising that PHRGL would pay High-Def's invoices, confirming the money was owed to High-Def and confirming that PHRGL was satisfied with High-Def's work.[26]

Between August, 2015 and July, 2016, High-Def contacted Doronin for payment of the outstanding invoices High-Def issued to PHRGL.  Doronin did not contest the invoices.  On information and belief, Doronin was then in control of PHRGL.[27]

---

[19]    *See Minhas Decl. ¶12.*

[20]    *See Minhas Decl. ¶13.*

[21]    *See Minhas Decl. ¶14.*

[22]     *Id.*

[23]    *See Minhas Decl. ¶5.*

[24]    *Id.*

[25]    *Id.*

[26]    *See Minhas Decl. ¶15.*

# 3422933  v. 5

B.      **The Diversion of PHRGL's Assets and the U.S. Bankruptcy Cases**

In the interest of avoiding duplicity, High-Def will not recite the full background relative

to this Objection, but rather refers the Court to Background Sections B and C contained at pages

9-23 of the Memorandum of Law in Support of Lightray Imaging Inc.'s Opposition to Motion to

Dismiss the Chapter 7 Case of Peak Hotels and Resorts Group Limited (the "Lightray

Memorandum"), Docket No. 112.

## III.    <u>ARGUMENT</u>

A.      **Tarek Lacks Standing to Seek Dismissal of PHRGL's Chapter 7 Case**

Tarek is not a creditor of PHRGL.  Instead, Tarek asserts that it is the majority

shareholder of PHRGL.  PHRGL in in liquidation, and Tarek claims that PHRGL has no assets.

Accordingly, based on its own statements, Tarek does not have a financial interest in PHRGL,

and, therefore, lacks standing to contest the petition.

Additionally, pursuant to the Bankruptcy Code and Bankruptcy Rules, only PHRGL has

standing to contest the involuntary petition against it.  Section 303(d) of the Bankruptcy Code

specifies that only a "debtor, or a general partner in a partnership that did not join in the petition,

may file an answer to a petition under this section."  11 U.S.C.§ 303(d).  Similarly, Rule 1011(a)

of the Federal Rules of Bankruptcy Procedure, entitled "who may contest petition," specifies that

the "debtor named in an involuntary petition may contest the petition."  FED. R. BANKR. P. 1011.

The "sufficiency of an involuntary petition may only be challenged by the debtor and *not by*

*creditors or third parties*."  *In re MarketXT Holdings Corp*., 347 B.R. 156, 160 (Bankr. S.D.N.Y.

2006) (emphasis added).  Accordingly, a non-party, such as Tarek, "lacks standing to challenge

the sufficiency of the petition," and the Court will deny its attempts to dismiss the petition. *Id*. at

---

[27]    *See Minhas Decl. ¶16.*

160 & 162.  *See also* 11. U.S.C. § 303(d) (providing that "[t]he debtor … may file an answer to a petition under this section"); *In re QDN LLC*, 363 F. App'x. 873, 875-76 (3d Cir. 2010) ("[i]t is well-established that a creditor … does not have standing to contest an involuntary bankruptcy filing"); *In re New Era Co.*, 115 B.R. 41, 45 (Bankr. S.D.N.Y. 1990) (concluding that the non-petitioning creditor had no standing to contest or seek dismissal of involuntary petition under § 303) (collecting cases).  Tarek claims to be the majority shareholder of PHRGL.  That equity interest does not confer standing to seek dismissal.  Thus, by the plain language of the statute and the governing rule of procedure, Tarek lacks standing to contest the petition. This reason, alone, is sufficient grounds to deny Tarek's Motion.  *See In re United Tax Grp., LLC*, 2016 Bankr. LEXIS 4315, at *13 (Bankr. D. Del. Dec. 12, 2016) (denying motion to dismiss chapter 7 case due to movant's lack of standing); *see generally Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60-61 (2d Cir. 2011); *Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*, 505 F.3d 109, 118-119 (2d Cir. 2007).

**B.      Tarek Lacks Standing to Object to High-Def's Claims**

Pursuant to Section 502(a) of the Bankruptcy Code, a party in interest has the right to object to High-Def's claim.  A party in interest generally is a creditor or one whose pecuniary interest will be affected by the case.  *In re Manshul*, 223 B.R. 428, 429 (Bankr. S.D.N.Y. 1998) ("the term 'party in interest' is not defined in either the Code or the Federal Rules of Bankruptcy Procedure, but 'the phrase has generally been interpreted in a Chapter 7 case to refer to creditors of the debtor who have claims against the estate and whose pecuniary interests are directly affected by the bankruptcy proceedings'").  Tarek is not a party in interest in this case.  *See In re E.S. Bankest, L.C.*, 321 B.R. 590, 594 (Bankr. S.D. Fla. 2005) (the "term party-in-interest is generally understood to include all persons whose pecuniary interests are [sic] directly affected by the bankruptcy proceedings"); *see also In re Rosenberg*, 472 Fed. App'x 890, 890 (11th Cir.

8

# 3422933  v. 5

2012) (concluding party with no financial interest in case lacks standing). Moreover, the Chapter 7 Trustee is responsible for the administration of this bankruptcy case, including objecting to claims, and the case law is clear that stockholders lack standing to object to creditors' claims. As aptly stated by the District Court for the Southern District of New York:

> "[f]or the same reason that the Chapter 7 debtor and creditors usually may not object to the allowability of another creditor's claim when there is an appointed trustee, *the debtor's stockholders ... lack the standing to object to the allowability of the claims of creditors to the debtor*." An equity holder, as part-owner of a debtor corporation, receives payment only if there is a surplus after all creditors' claims are paid. Moreover, to the extent that equity holders resemble creditors, allowing an individual equity holder to object to a claim where a trustee has been appointed poses a similar threat to the orderly and expeditious administration of proceedings.

*Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 129 (S.D.N.Y. 2011) (internal citations and quotations omitted) (emphasis added). Finally, leave to object to a creditor's claim may be granted to a party in interest, but "[l]eave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so." *In re Thompson*, 865 F.2d 1136, 1147 (1st Cir. 1992).

Tarek is not a party in interest in this case. Upon information and belief, Tarek has not asked the Chapter 7 Trustee to object to High-Def's claim, nor has it requested leave from the Court to object to High-Def's claim. Finally, Tarek has not even attempted to argue that any special circumstances exist that would support leave from the Court to allow it to object to High-Def's claim against PHRGL. Accordingly, it is indisputable that Tarek lacks standing to object to High-Def's claim and cannot rely on its challenge to High-Def's claim as the basis for granting its Motion.

Finally, in ascertaining whether Tarek has standing it is "appropriate for [the] court to examine [Tarek's] motivation of the party asserting party-in-interest standing." *In re E.S.*

9

# 3422933 v. 5

*Bankest, L.C.*, 321 B.R. 590, 595 (Bankr. S.D. Fla. 2005).  Tarek's motive is transparent---to protect Doronin.

### C.    PHRGL Qualifies as a Debtor under Section 109 of the Bankruptcy Code

Tarek alleges that PHRGL does not qualify as a debtor under the Bankruptcy Code. Specifically, Tarek asserts PHRGL does not have any property in the United States, and that PHRGL was struck from the BVI register and therefore cannot be a debtor.  Neither of these arguments have merit.

### i.    PHRGL Has Property in the United States

The Bankruptcy Code requires that a debtor "reside[] or ha[ve] a domicile, a place of business, or property in the United States."  11 U.S.C. § 109.  At the time of the filing PHRGL had property in Florida in the form of an unused $2500 retainer paid to an attorney.  Upon information and belief.  That unused retainer has been turned over to the PHRGL estate.

There is ample authority that a retainer by a foreign entity, held in the United States, constitutes property sufficient for a bankruptcy filing.  *See In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 372–73 (Bankr. S.D.N.Y. 2014) ("[t]here is a line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States"); *see also In re U.S. Steel Canada Inc*., 571 B.R. 600, 611 (Bankr. S.D.N.Y. 2017) (courts in the Second Circuit and elsewhere recognize professional retainers as property under section 109).  *See also In re Ocean Rig UDW Inc.*, 570 B.R. 687, 699 (Bankr. S.D.N.Y 2017) (unused attorney retainer sufficient to establish eligibility requirement of § 109); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (finding that the debtor was eligible for bankruptcy protection under § 109 due to, among other things, an attorney retainer on deposit in the U.S.); *In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 82-83 (Bankr. S.D.N.Y. 2015) (holding that in a chapter 15 case, a retainer deposited

10

with an attorney in the United States satisfies § 109's eligibility requirements). It is irrelevant

that the retainer is not a large amount. *See Octaviar*, 511 B.R. at 373 ("Section 109(a) says,

simply, that the debtor must have property; it says nothing about the amount of such property");

*In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002) ("there is no statutory

requirement as to the property's minimum value").

<b>ii.    An Unregistered Company Can Qualify as a Debtor</b>

Whether PHRGL was struck from the British Virgin Islands ("BVI") corporate register in

advance of the filing of the involuntary petition is irrelevant to whether PHRGL qualifies as a

debtor under the Bankruptcy Code. Indeed, the BVI Business Companies Act expressly provides

that the fact that a company is no longer listed on the BVI register does "not prevent [any]

creditor from making a claim against the company and pursuing the claim through to judgement

or execution." Section 215(3)(b) BVI BUSINESS COMPANIES ACT, 2004. Similarly, under United

States law, it is "clear that a dissolved corporation may be a debtor under chapter 7 of the

Bankruptcy Code and may be the subject of an involuntary chapter 7 case." *Matter of Luftek,*

*Inc.*, 6 B.R. 539, 541 (Bankr. E.D.N.Y. 1980) (citing 11 U.S.C. §§109(b) and 303(a)); *see also*

*Automatic Sprinkler Corp. of Am. v. Darla Envtl. Specialists Inc.*, 53 F.3d 181, 182 (7th Cir.

1995) (noting, "[m]ost states treat dissolved corporations as continuing to exist for some time, so

that creditors may collect outstanding debts"). Here, PHRGL was subject to administrative

suspension. Upon information and belief, it has been relisted on the BVI corporate register.

Regardless of whether PHRGL was listed at the time the petition was filed, PHRGL is a

qualified debtor, and the Court must reject Tarek's arguments to the contrary.

11

**D.     High-Def Holds a Claim Against PHRGL Sufficient to Meet the Conditions Set Forth in Section 303(b) of the Bankruptcy Code.**

Pursuant to Section 303 of the Bankruptcy Code, in a case where there are fewer than 12 unsecured creditors, an involuntary petition is valid so long as "(i) the petitioning claimholder's claim is not contingent as to liability or subject to a bona fide dispute as to liability or amount, (ii) the petitioning claimholder is undersecured by at least $15,775, (iii) there are fewer than twelve claimholders (not counting insiders, employees, transferees of voidable transfers, and holders of contingent or disputed claims), and (iv) the alleged debtor is generally not paying its debts as they become due."  *In re Ishaky*, 2010 WL 935572, at *3 (Bankr. E.D.N.Y.) (internal quotations and citation omitted).  Despite Tarek's protests to the contrary, High-Def's petition meets each of these four criteria.

**i.     No Bona Fide Disputes Exist as to the Existence or Amount of High-Def's Claim**

Tarek asserts that High-Def's claim for payment is subject to a bona fide dispute and that High-Def has not shown that PHRGL is failing to pay its debts as they become due.  Tarek is wrong.

The Bankruptcy Code has not defined the phrase "bona fide dispute."  Instead, the Second Circuit applies an objective test to ascertain whether a bona fide dispute exists. Specifically, the bankruptcy court "must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt.  The objective standard allows a creditor to be disqualified whenever there is any legitimate basis for the debtor not paying the debt, factual or legal." *In re Ishaky*,  2010 WL 935572, at *3 (Bankr. E.D.N.Y.) (internal quotations and citations omitted).  Moreover, when "applying the objective test, the Second Circuit also adopted a burden shifting framework. A petitioning creditor must first establish a prima facie case that no bona fide dispute exists before the burden shifts to the debtor.  Because

12

the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden." *Id.* at \*4 (internal citation and quotation omitted). Through Minhas' Declaration, High-Def has established a prima facie case that its claim is not subject to a bona fide dispute.

Specifically, PHRGL entered into the Contract with High-Def. High-Def performed under the Contract and invoiced PHRGL. For more than two and a half years, High-Def emailed and called PHRGL seeking payment. At no time in the nearly four years since High-Def performed under the Contract with PHRGL has PHRGL, Omar or Doronin disputed that PHRGL owes High-Def payment on its invoices.[28] In fact, PHRGL confirmed that High-Def's work was satisfactory.

Tarek has submitted absolutely no evidence to contradict these facts. Instead, without a scintilla of support, Tarek argues that the debt is a personal debt of Amanat's. Tarek's argument is nothing more than an unsubstantiated proclamation, which flies in the face of High-Def's Contract with PHRGL, High-Def's performance thereunder, and the failure of PHRGL, Amanat and Doronin to deny liability for, or otherwise contest, the debt owed to High-Def by PHRGL. Not even PHRGL, which, unlike Tarek, would have standing to file a motion to dismiss, could prevail on such a desperate, unsubstantiated assertion. *See In re Paper I Partners, L.P.*, 283 B.R. 661, 676 (Bankr. S.D.N.Y. 2002). It "was not the intention of Congress that a debtor [*which Tarek is not*] be able to avoid bankruptcy by merely disputing the existence or amount of a claim."

---

[28]    *See Minhas Decl.* ¶¶14 and 15.

13

### ii.    Amanat Had Authority to Bind PHRGL

The Contract is between High-Def and PHRGL and was signed by Amanat as PHRGL's representative.  Amanat described PHRGL's hotels and requested that High-Def design prototypes which High-Def did.  Accordingly, Amanat certainly held himself out to High-Def at all times as having authority to bind PHRGL under the Contract.  Based upon his actions, Amanat had apparent, if not actual, authority to enter into the Contract on PHRGL's behalf.  *See, e.g., Walton v. Johnson*, 66 A.3d 782, 786 (Pa. Super. Ct. 2013) ("[a]pparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act"); *see also Leidigh v. Reading Plaza Gen., Inc*., 636 A.2d 666, 667–68 (Pa. Super. Ct. 1994) ("it is well-settled that '[a]pparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent authority he or she purports to exercise' ") (quoting *Turner Hydraulics v. Susquehanna Const.,* 606 A.2d 532, 534 (Pa. Super. Ct. 1992)) (emphasis added).

In a factually analogous situation, a court found apparent authority to enter into a contract on behalf of an entity where,

> through his course of dealing with [appellee], Boyle held himself out to [appellee] as having the apparent authority to bind appellant to the contract of sale of the dining car. These negotiations resulted in the sending of two letters indicating appellant's intent to purchase the dining car, a contract of sale signed by Boyle on behalf of appellant and appellant's payment of relocation expenses for the dining car after the contract of sale had been completed. Clearly, [appellee's] belief that Boyle had the apparent authority to bind appellant was reasonable. Hence, the evidence was sufficient to establish Boyle's apparent authority.

*Leidigh*, 636 A.2d at 668 (internal citations omitted).  A third party such as High-Def "is entitled to believe [an] agent has the authority he purports to exercise only where a person of ordinary

14

prudence, diligence and discretion would so believe." *Id.* Given Amanat's representation he was acting on behalf of PHRGL, Amanat's signing of the Contract on behalf of PHRGL, Amanat's request that High-Def develop prototypes for use specifically in PHRGL's hotels, and High-Def's installation in PHRGL's offices of the prototype equipment intended to be used in PHRGL's hotels, it was more than reasonable for High-Def to believe that Amanat had the authority to bind PHRGL under the Contract.

Tarek concocts an argument regarding the chronology of the Contract and PHRGL's existence, in a further attempt to challenge High-Def's claim. (Tarek Br. at 27-28). Although Amanat signed the Contract on January 17, 2014 prior to PHRGL becoming a registered entity in the British Virgin Islands, he ratified the Contract on behalf of PHRGL by resigning it after PHRGL[29] became a registered entity in the British Virgin Islands. Thus, Tarek's argument is nothing more than a red herring, designed to distract and confuse the Court.

Generally, a corporation is not bound by pre-incorporation contracts unless it ratifies or adopts the pre-incorporation contract. *See Gianino v. Panacya*, 2000 WL 1224810, at *7 (S.D.N.Y.) ("a corporation is not ... generally liable for contracts between third parties and its promoters absent corporate adoption of the contract") (citations omitted); *see also In re Super Trading Co.*, 22 F.2d 480, 482 (2d Cir. 1927) ("[c]ontracts entered into with the promoter of a corporation thereafter to be created, with the intention that the corporation, when formed, shall be bound thereby, may subsequently be 'adopted' by the corporation") (citations omitted). Here, Amanat, on behalf of PHRGL deliberately and expressly ratified and adopted the Contract by re-executing it in its entirety once PHRGL was formally incorporated.

---

[29]    *See Minhas Decl. ¶13.*

Tarek also makes the far-fetched argument that PHRGL could not owe debts since its only asset was shares in ARGL.  This argument completely ignores reality---PHRGL entered into the Contract with, and accepted goods and services from, High-Def for which it did not pay. Moreover, there are other creditors of PHRGL's estate.  Again, Tarek's argument is nothing more than an attempt to direct the Court's attention away from the undisputed facts relating to the Contract between PHRGL and High-Def, and High-Def's performance thereunder.  Without a doubt PHRGL did not pay its debt to High-Def when it came due.  Tarek, PHRGL's majority stockholder, has said that PHRGL has <u>no</u> assets.  To reach this conclusion, this Court has noted that the "Court may also look at whether the debtor has terminated its business operations entirely, and whether the past debts that are due are extremely large in comparison to the debtor's assets")  *See, e.g., In re Paper I Partners, L.P.*, 283 B.R. 661, 677 (Bankr. S.D.N.Y. 2002) (internal citation and quotation omitted).  Here, High-Def's debt is tiny in comparison to the value of PHRGL's assets at the time the debt was incurred.  PHRGL has terminated its operations, and according to its majority stockholder, has no assets.  Accordingly, prior to the commencement of this bankruptcy case, PHRGL was not paying its debts as they became due.[30]

PHRGL's debt to High-Def is not subject to a bona fide dispute.  Tarek has failed to satisfy its burden in this regard.  Accordingly, High-Def is qualified to serve as the petitioning creditor in this case.

### E.    This Case was not Commenced in Bad Faith.

Ignoring the fact that High-Def is a small business that provided goods and services to PHRGL for which it remains unpaid, Tarek accused High-Def of filing this petition in bad faith. Nothing is farther from the truth.

---

[30] *See* Claims Docket for additional debts of PHRGL not paid when they became due.

# 3422933  v. 5

High-Def, as the petitioning creditor, has "certain procedural advantages in [its] favor. First, there is a presumption of good faith on the part of the petitioners, and the objecting party has the burden of proving bad faith." *In re Reveley*, 148 B.R. 398, 406 (Bankr. S.D.N.Y. 1992); *see also In re TPG Troy, LLC*, 2013 WL 3789344, at *5 (Bankr. S.D.N.Y.) ("petitioning creditors are presumed to have acted in good faith by filing an involuntary petition, and the objecting party has the burden of proving bad faith"). "[I]t is unclear whether the standard of proof for establishing bad faith is clear and convincing evidence or preponderance of the evidence." *Id.* Since Tarek has offered absolutely <u>no</u> evidence of bad faith on High-Def's part, the standard of proof is irrelevant for purposes of this objection.

It is clear from the preceding arguments and Mr. Minhas' Declaration that High-Def did not file the involuntary petition against PHRGL in bad faith. High-Def holds a bona fide claim against PHRGL which remains unpaid. Earlier this year, High-Def learned that there is a possibility that PHRGL's assets may have been transferred wrongfully, and the further possibility that value could be recovered by a Chapter 7 trustee. High-Def spoke to another creditor of PHRGL, a former principal of PHRGL and counsel, and has determined that its best chance of obtaining payment of its claim is through PHRGL's bankruptcy.

Tarek claims, however, that High-Def filed the petition based on "false or misleading information," used "bankruptcy as a vehicle to resolve a two-party dispute," and lacks "legitimate debt" (Tarek Mot. ¶ 63 at 23). In support, Tarek asserts Amanat directed High-Def to file the petition. (Tarek Mot. ¶ 65 at 23-24). Nothing is farther from the truth. As indisputably demonstrated herein and supported by evidence, High-Def has a valid claim against, and is a creditor of, PHRGL. *See* Minhas. Decl.

17

Tarek further asserts PHRGL was not properly served with the summons and petition (*id.*). Tarek is not the debtor here. Tarek was not subject to the service of process rules it now contests. Thus, Tarek lacks standing to assert insufficient service of process. *See, e.g., Parry v. St. Catherine of Siena Medical Center*, 2014 WL 639422, at *4 (E.D.N.Y.) (finding "insufficient" affidavit of non-party "to dispute service of process"). Insufficient service of process is a claim reserved for PHRGL, the defendant debtor, and PHRGL has made no such assertion.[31] Furthermore, even assuming service of process was not sufficient, dismissal is not the proper remedy. In a similar factual scenario, despite finding that service on a former BVI registered agent did not constitute service of process, the court refused to dismiss the claims, instead allowing service of process on the entity in a different jurisdiction. *See Carney v. Beracha*, 996 F. Supp. 2d 56, 69 (D. Conn. 2014); *see also Aries Ventures Ltd. v. Axa Fin. S.A.*, 729 F. Supp. 289, 303 (S.D.N.Y. 1990) (referring to the Federal Rules and stating "dismissal is not invariably required when service of process is improper"); *In re Bavelis*, 453 B.R. 832, 866 (Bankr. S.D. Ohio 2011) (concluding defendants in adversary proceeding "would not be prejudiced to proceed once the summonses are corrected and re-served; accordingly, dismissal based on defective process and service of process would be inappropriate"). Here, upon information and belief, PHRGL has been reinstated on the BVI register. Tarek, a non-creditor shareholder suffered no prejudice even <u>if</u> service was improper. Certainly, the valid interests of creditors such as High-Def outweigh the ultimate sanction of dismissal for an alleged procedural defect.

---

[31]    High-Def has every reason to believe service of process was proper as the petition was served on PHRGL's registered agent, despite it being delisted. In fact, if a creditor such as High-Def can assert a claim against an unlisted company, it must be able to serve that company with notice of the claim, as High-Def did here. To assert otherwise is nonsensical. Moreover, as LightRay notes, service of process was proper under the both the federal and the bankruptcy rules (LightRay Br. at 32-33).

Tarek seems to attempt to tie High-Def to alleged fraud involving LightRay, Amanat and the Chapter 7 Trustee. Tarek does not even attempt to explain how High-Def is involved in these accusations, or how these accusations relate to High-Def's alleged bad faith filing.

Tarek also accuses High-Def of commencing this case to resolve a two party dispute. It makes this argument in its 34-page memorandum filed in support of the Motion. The majority of the 34 pages is dedicated to accusations against people and entities other than High-Def and describing a massive fraud or conspiracy engaged in by those other people and entities. Therefore, either the majority of the memorandum is irrelevant to this case, or any argument that High-Def is attempting to resolve a two-party dispute is disingenuous, at best. Indeed, there are other creditors who seek relief in this bankruptcy case. Moreover, "even if there were what could be regarded as a two party dispute here, that by itself would not show bad faith filing." *In re Paper I Partners, L.P.*, 283 B.R. 661, 680 (Bankr. S.D.N.Y. 2002).

## F.     Dismissal Pursuant To Section 305 Is Not Warranted

Tarek seeks to have the Court dismiss the case under Section 305 "because the interests of justice require it" (Tarek Mot. ¶ 81 at 29). A "motion under section 305(a) to dismiss a petition or suspend the bankruptcy case is a form of extraordinary relief." *In re Paper I Partners, L.P.,* 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002); *see also id.* ("[a]bstention pursuant to section 305 of the Code is a power that should only be utilized under extraordinary circumstances"). Tarek's entire Section 305 argument consists of a regurgitation of both the elements a court considers when determining whether to exercise the extraordinary power of dismissal and its unfounded accusation that the "Chapter 7 Case is nothing more than a loosely disguised attempt to continue a dispute between the shareholders of PHRGL, which had been settled by those shareholders in the English Proceedings" (Tarek Mot. ¶¶ 82 & 85 at 30-31).

19

This broad, unsubstantiated statement, which has absolutely nothing to do with High-Def is insufficient to warrant the "extraordinary relief" of dismissal.

In determining whether to exercise the extraordinary sanction of dismissal of the petition the Court should consider seven factors:

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464–65 (Bankr. S.D.N.Y. 2008) (internal citation and quotation omitted). Tarek "bears the burden to demonstrate that the interests of the debtor and its creditors would benefit from dismissal," and the Court should only grant dismissal where it determines the interests of both the debtor and the creditors are best served by dismissal. *Id.* at 462-63. Tarek cannot sustain this burden. Thus, dismissal is not in the "interests of justice."

Here, there is "a strong possibility that additional assets of the estate may be discovered [which] argues against dismissal and for retention of jurisdiction in order to assure the equitable and full distribution of newly discovered assets and voidable transfers to all creditors." *In re Dinova*, 212 B.R. 437, 441 (B.A.P. 2d Cir. 1997). In fact, this Court, in denying a motion to dismiss under Section 305, has stated, "it is far more important, and potentially far more remunerative to the estate and its creditors, for an independent fiduciary to review the pre-assignment dealings between the Assignee and the owners, to review the management agreement that was executed, and to review the sale that was made, so that those matters, if appropriate, may be subjected to challenge." *In re Scandia Seafood (New York), Inc.*, 2017 WL 2062894, at

20

*8 (Bankr. S.D.N.Y.).  This Court has further concluded it does not see "how it can disregard creditors' needs and concerns to suit the preferences of management or equity."  *In re Paper I Partners, L.P.*, 283 B.R. 661, 679-80 (Bankr. S.D.N.Y. 2002) (emphasis added).  It is apparent the true motive behind the vehement (yet unfounded) accusations that High-Def is wrongfully conspiring with Amanat is that Tarek is trying to protect its own interests.  That motive cannot prevail over High-Def's legitimate claim for payment against PHRGL.

Tarek's mantra that the "Chapter 7 Case was commenced solely in furtherance of Amanat's scheme to harass his adversaries and use this Court as a tool for attaining his goals in a dispute that is the antithesis of a bona fide attempt to restructure PHRGL" (Tarek Mot. ¶ 86 at 31) fails to persuade that dismissal is the proper outcome.  Amanat's motives are not at issue here.  Upon information and belief, Amanat is not a party in interest in this bankruptcy case.  High-Def holds a valid and legitimate claim and has basis for filing this petition, and dismissal will not serve the interests of justice.

# 3422933  v. 5

## V.    <u>CONCLUSION</u>

Wherefore, High-Def respectfully requests this Court deny the Motion and permit this

bankruptcy case to proceed.  Should the Court be reluctant to deny the Motion on the papers,

High-Def respectfully requests an evidentiary hearing.

Dated: New York, New York
      November 22, 2017

Respectfully submitted,

*/s/ Deborah A. Reperowitz*                   
Deborah A. Reperowitz
Email: dreperowitz@stradley.com
Gretchen M. Santamour
Email: gsantamour@stradley.com

Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, NY 10017
Tel: (212) 812-4138
Fax: (646) 682-7180

*Attorneys for High-Def Zone, Inc.*

# 3422933  v. 5